UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOILISE CROSSLEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | No. 1:23-cv-00498-JPH-MG |
| ) | |
| TURNER, *Warden*, ) | |
| ) | |
| Respondent. ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Petitioner Joilise Crossley seeks a writ of habeas corpus under 28 U.S.C. § 2254. She challenges a prison disciplinary proceeding in which she was found guilty of the offense of possessing or soliciting unauthorized personal information and was sanctioned with a 90-day loss of good-time credit and other non-custody related sanctions. Dkt. 1 at 1. She alleges that the discipline was imposed in violation of her due process rights. For the reasons explained below, Ms. Crossley's due process rights were not violated by the disciplinary hearing and her habeas petition is **DENIED**.

**I.
LEGAL BACKGROUND**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written

1

notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II.
### FACTUAL BACKGROUND

On October 3, 2022, Investigator Parsons wrote a Conduct Report charging Ms. Crossley with the offense of possession or solicitation of unauthorized personal information, which prohibits:

> Possessing or soliciting unauthorized personal information regarding another offender, ex-offender, victim/witness, potential victim, or current or former staff person, including but not limited to personnel files, offender packets, medical or mental health records, photographs, Social Security Numbers, home addresses, financial information, or telephone numbers, except as authorized by a court order or as approved in writing by the Warden. This includes soliciting for correspondence (pen-pals) through forums on any website or periodical.

Dkt. 15-9 at 9. The Conduct Report states:

> On 09/22/22 at [approximately] 8:30am I, Investigator Parsons discovered a GTL contact[1] under the name Dawmonique Malone. Incarcerated Individual Crossley Joilise #253228 was interviewed on 9/26/22 at 2:55pm. During this interview I.I. Crossley verbally admitted to knowing this GTL account was Correctional Officer Crystal Gordon. On 10/03/2022, upon completing the investigation it was determined that Individual Crossley knowingly communicated with and had the personal GTL account information of Officer Gordon.

---

[1] GTL is an inmate messaging service where users can create an account to message with inmates. *See Inmate Messaging,* GTL, https://www.gtl.net/correctional-facility-services/communication-solutions/inmate-messaging/ (last visited October 15, 2024).

Dkt. 15-1. A confidential Report of Investigation relating to Ms. Crossley's disciplinary case was filed ex parte for the Court's review at dkt. 17, along with an ex parte manually filed CD containing video footage of Respondent's interview of Ms. Crossley relating to this case at dkt. 19.[2]

Ms. Crossley was notified of the charge and pleaded not guilty. Dkt. 15-2. A hearing was held in October 2022. Dkt. 15-4. The Disciplinary Hearing Officer ("DHO") took into consideration the Conduct Report, the Report of Investigation, and Ms. Crossley's statement that she did not "have any personal information belonging to [Officer] Gordon. The only information she had was for [Officer] Gordon's sister," Dawmonique Malone. Dkt. 15-4. The DHO found Ms. Crossley guilty. Dkt. 15-4. The sanctions imposed included a 90-day loss of good-time credit. Dkt. 15-4.

After her IDOC appeals were denied, dkt. 1-1 at 3-4, Ms. Crossley brought this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Dkt. 1.

---

[2] Ms. Crossley objects to the Respondent's ex parte filing of these exhibits, arguing that the exhibits should not be filed ex parte because the Respondent did not provide an adequate justification for doing so. Dkt. 21. The Seventh Circuit has authorized ex parte, in camera review of confidential reports and video recordings to preserve institutional safety and correctional goals. *See, e.g., Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003) (observing that a prisoner is not entitled to view security tape where there are bona fide security concerns, but that due process requires the district court to conduct an in camera review to ensure that exculpatory evidence was not withheld). Investigative reports containing confidential information may also be filed with an ex parte restriction. *Mendoza v. Miller*, 779 F.2d 1287, 1294 (7th Cir. 1985). The Court finds that the evidence here contains sensitive information such that its disclosure could be harmful to other individuals or compromise the security of the facility, and therefore **OVERULLES** Ms. Crossley's objections.

# III.
## ANALYSIS

Ms. Crossley asserts three arguments in support of her Petition for a Writ of Habeas Corpus, which the Court construes as: (1) she was improperly denied evidence that would show her innocence; (2) there is insufficient evidence to support the finding of guilt; and (3) she was retaliated against and did not receive a fair hearing because several policies were not followed during the hearing and the Disciplinary Review Officer ("DRO") made several biased comments. Dkt. 1 at 8-9.

### A. Denial of Evidence

Ms. Crossley argues that she asked for "policy, statements (witness), GTL messages, and IA footage multiple times at [her] screening, postponement hearing, and actual hearing to properly defend [herself] against said charges" and "for summary of DH video, in which [she] never received." Dkt. 1 at 8. She asserts that her requests were "never verbally denied nor did [she] receive written explanation" of her requests being denied. *Id.*

The Respondent argues that the record shows only that Ms. Crossley would "bring policy to the hearing" and does not show that Ms. Crossley requested any witnesses, witness statements, GTL messages, or video footage. Dkt. 15 at 9. The Respondent concedes that "it appears [Ms.] Crossley did not receive a copy of the policy before" her hearing, but that it does not amount to a due process violation because "Ms. Crossley does not explain how having a copy of the [policy] would have helped her defense." *Id.* The Respondent also argues that Ms. Crossley "fails to identify any witnesses that she wanted to request but

4

was denied" and "fails to explain how having the GTL messages and video footage would have helped her defense." *Id.*

In reply, Ms. Crossley argues that she asked for Investigator Parsons "to appear as a witness and she refused, saying that her write up and report were her statement." Dkt. 22 at 4. Ms. Crossley asserts that had Investigator Parsons appeared, she would "have asked her to point out in her record the evidence of where the information was that she possessed." *Id.* at 4. She reiterates that she was denied a copy of the GTL messages, and that those messages would show that she did not have any personal information. *Id.* at 2.

Due process affords an inmate in a disciplinary proceeding a limited right "to call witnesses and present documentary evidence in [her] defense when permitting [her] to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566; *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Inmates do not, however, "have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). An inmate must request and seek to present the evidence either before or at the time of her hearing. *See id.* at 502-03; *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002) (a request is timely if it is made "either before or at the hearing."). But even if an inmate timely requests evidence, due process is not violated unless the inmate is deprived of an opportunity to present material, exculpatory evidence. *See Piggie*, 344 F.3d at 678. Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones*, 637

F.3d at 847, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008).

Here, any denial of evidence did not rise to the level of a due process violation. While it appears that Ms. Crossley asked for but did not receive a copy of the prison policy before her hearing, that evidence was not exculpatory or material. Ms. Crossley believes that she should have been charged with a lesser offense under the policy. Dkt. 15-2 (Ms. Crossley stating that she is "admitting guilty to 361," which is the offense of abuse of mail, telephones, or visitation); dkt. 15-9 at 12 (listing offense 361). But that shows only that Ms. Crossley was familiar with and could make arguments under the policies at issue, not that she was unaware of them. Moreover, the fact that a lesser offense could have been charged instead does not undermine or contradict a finding of guilt on a higher or different offense.

As to Ms. Crossley's argument regarding denial of "statements (witnesses)," the record shows that Ms. Crossley requested a "witness statement" from Investigator Parsons in the form of "live cross examination of [Investigator] Parsons at [the] hearing" when she requested a postponement of her hearing. Dkt. 15-3. Yet Investigator Parsons only provided a written statement for Ms. Crossley's hearing: "My conduct report dated 10/03/22 is my statement," and there is no evidence in the record explaining why Investigator Parsons did not present live testimony at the hearing. Dkt. 15-5.

While "prison authorities generally must explain a refusal to permit live testimony," "inmates 'do not have the right to call witnesses whose testimony

6

would be irrelevant, repetitive, or unnecessary." *Ashby v. Davis,* 82 F. App'x 467, 470 (7th Cir. 2003) (quoting *Pannell,* 306 F.3d at 502-04)). Although the refusal to let Ms. Crossley call Investigator Parsons as a witness was not explained, that doesn't change the fact that Ms. Crossley did not have the right to call Investigator Parsons as a witness. That's because her anticipated testimony—"to point in her record the evidence of where the information was that [Ms. Crossley] possessed," dkt. 22 at 4—would have been "irrelevant, repetitive, or unnecessary," *see Ashby,* 82 F. App'x at 470. Investigator Parson's Conduct Report clearly indicates that the information that Ms. Crossley was alleged to have possessed was the GTL account that Officer Gordon used under the name of Dawmonique Malone. Dkt. 15-1. In other words, the evidence was possession of the GTL contact itself, as already identified in the Conduct Report, not any specific information in messages. While Ms. Crossley believes that evidence is not enough to support her disciplinary finding, it is the evidence that the guilty finding rests on and had already been identified by Investigator Parsons.[3] Further, to the extent that Ms. Crossley argues that she had a right to cross-examine Investigator Parsons at her hearing, that argument is without merit

---

[3] The Court addresses Ms. Crossley's argument that having the GTL account used by a correctional officer does not amount to possessing "unauthorized personal information" within the meaning of the offense below when addressing Ms. Crossley's sufficiency-of-the-evidence argument.

7

because there is no right to confrontation or cross-examination in prison disciplinary hearings. *Wolff*, 418 U.S. at 567-68.

As to a copy of GTL messages and video footage, there is no evidence that Ms. Crossley requested such evidence either before or at her hearing. *See* dkt. 15-2 (Screening Report indicating that the requested physical evidence was only a copy of the policy); dkt. 15-3 (postponement form indicating that Ms. Crossley requested a postponement for Investigator Parson's attendance); dkt. 15-4 (Hearing Report lacking any mention of GTL messages as evidence or video footage). Because Ms. Crossley did not timely request access to this evidence, her rights were not violated by not being permitted to review it before the hearing. *See Pannell*, 306 F.3d at 502-03; *Piggie*, 277 F.3d at 925.

The record shows that Ms. Crossley only requested a summary of the evidence against her to prepare her defense. Dkt. 1-1 at 20-22. To the extent Ms. Crossley is arguing that she did not receive such a summary, this argument is without merit because it is not evidence to which she was entitled. *See Wolff*, 418 U.S. at 556 ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."); *Boyd v. Warden*, 2022 WL 17404192, at *4 (S.D. Ind. Dec. 2, 2022) ("Due process does not require that [the petitioner] receive advanced notice of all witnesses or the evidence against him in a disciplinary case.").

In any event, even if Ms. Crossley had timely requested the GTL messages, she has not shown that they would be exculpatory. The crux of the charged offense was possession of information related to the Dawmonique Malone GTL

account that Officer Gordon used and communicating with Officer Gordon through that account. Dkt. 22 at 2. In other words, Ms. Crossley's guilt was premised on her possession of the means to communicate with Officer Gordon through the GTL account—information relating to the Dawmonique Malone GTL account. So regardless of the content of any specific messages between Ms. Crossley and the Dawmonique Malone GTL account, Ms. Crossley's rights were not violated by not being provided copies of the GTL messages even if she had timely made such a request. *Toliver*, 539 F.3d at 780-81; *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (harmless error doctrine applies to prison disciplinary cases).

As to the video footage Ms. Crossley contends that she requested, she did not explain its relevance or how the footage would have changed the outcome. And the Court reviewed the video footage and finds that it was not exculpatory. So even if she had timely requested the video footage, Ms. Crossley would still not be entitled to relief on this argument.

Ms. Crossley is not entitled to habeas relief on her arguments regarding denial of evidence.

### B. Insufficient Evidence[4]

Ms. Crossley argues that she did not possess or solicit unauthorized personal information as defined in the offense since she was corresponding with

---

[4] While Ms. Crossley initially labeled this argument "Violation of My 1st Amendment Right to Correspond," her argument that corresponding with Officer Gordon through the Dawmonique Malone GTL account did not break any policy challenges the sufficiency of the evidence to support the offense of possession or solicitation of unauthorized personal information. Dkt. 1 at 8. Ms. Crossley recognizes in her reply brief that this argument raises a sufficiency of the evidence challenge. Dkt. 22 at 3–4.

Dawmonique Malone, who does not fall within the category of individuals listed in the offense.  Dkt. 1 at 8.  She asserts that she and Ms. Malone never communicated about Ms. Malone's sister, Officer Gordon, that her relationship with Ms. Malone did not involve or relate to Officer Gordon, and that the GTL account was Ms. Malone's account, not Officer Gordon's.  *Id.*  She contends that communicating with Ms. Malone does not amount to a violation and that there is no evidence of unauthorized information in the GTL messages between her and Ms. Malone.  *Id.*

The Respondent argues that there was sufficient evidence to find Ms. Crossley guilty since "the [C]onduct [R]eport state[s] that [Ms.] Crossley admitted she knew the GTL account under the name of Dawmonique Malone was actually the personal GTL account of [O]fficer Gordon" and "[a] conduct report alone can be sufficient evidence to support a finding of guilt."  Dkt. 15 at 11 (citing dkt. 15-1) (quoting *McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir. 1999)).  The Respondent also asserts that additional evidence from the confidential Report of Investigation supports the finding of guilt, including an admission from Officer Gordon that "she sent messages to [Ms.] Crossley through her sister Dawmonique Malone," Dkt. 15 at 11-12 (citing dkt. 17 at 2), and an Instagram message from Officer Gordon to Ms. Malone stating:

> Get on there and write [Ms. Crossley] for me please.  We have to throw them off.  Say . . .
>
> Hey baby!  I miss you and was just thinking about you.  I'm off work today.  I got off early last night so I'm up for a sec.  I don't have shit

10

>planned I may cook and then watch Raising Kanan.  It's going down the episodes get better every week lol I didn't get any of your messages so I thought I'd write you again.  [J]ust wanted to write you and tell you I love you!  Always thinking of you baby.  Kisses[.]

Dkt. 17 at 8.

In reply, Ms. Crossley reiterates her argument that there is insufficient evidence and questions what personal information within the offense she is alleged to have possessed: "Was it a phone number?  A Social Security Number?  Medical records?"  Dkt. 22 at 2.  She asserts that the Respondent did not identify what personal information of Officer Gordon she possessed.  *Id.*  She argues that the Conduct Report "makes a conclusive statement that [she] 'had the personal GTL account information of Officer Gordon,'" but that at best, the GTL account information only tells a user the name of the account owner, so even if the account was Officer Gordon's, she already knew Officer Gordon's name and argues names are not the type of unauthorized personal information proscribed by the offense.  Dkt. 22 at 7.

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary."  *Ellison,* 820 F.3d at 274.  The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard, *Moffat,* 288 F.3d 978, 981 (7th Cir. 2002), and a Conduct Report "alone" can "provide[] 'some evidence' for the . . . decision," *McPherson,* 188 F.3d at 786.  Under this standard, "the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board."  *Hill,* 472

11

U.S. at 455-56 (emphasis added); *see also Eichwedel v. Chandler,* 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board."). "[C]ourts 'are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis.'" *McPherson*, 188 F.3d at 786 (quoting *Hill*, 472 U.S. at 454); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) ("It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.").

Here, the Conduct Report is "some evidence" that supports the conclusion that Ms. Crossley possessed unauthorized personal information of Officer Gordon. The offense prohibits:

> Possessing or soliciting unauthorized personal information regarding . . . [a] current or former staff person, including but not limited to personnel files, offender packets, medical or mental health records, photographs, Social Security Numbers, home addresses, financial information, or telephone numbers, except as authorized by a court order or as approved in writing by the Warden. This includes soliciting for correspondence (pen-pals) through forums on any website or periodical.

Dkt. 15-9 at 9. The Respondent clearly identified the unauthorized personal information that Ms. Crossley was alleged to have possessed—the Dawmonique Malone GTL account that Officer Gordon used. Dkt. 15-1 (Conduct Report stating that "[Ms.] Crossley knowingly communicated with and had the personal GTL account information of Officer Gordon."). Although Ms. Crossley argues that it was only Ms. Malone's account and that Officer Gordon did not use it, the

12

DHO credited the Conduct Report stating otherwise and Officer Gordon's admission that she communicated with Ms. Crossley, which are findings that the Court cannot disturb. *McPherson*, 188 F.3d at 786; *Ping v. McBride*, 888 F. Supp. 917, 922 (7th Cir. 1993) (stating that in a prison disciplinary case, it is not the proper function of the court "to reweigh conflicting evidence and to make credibility determinations").

Ms. Crossley also argues that the GTL account only tells a user the name of the account owner, so it does not equate to the type of information referred to in the offense. This argument misses the point. Section 246 of the IDOC offenses has sweeping language that explicitly states that the information listed in the offense is not the only unauthorized information. Dkt. 15-9 at 9 (offense stating "including but not limited to" before listing examples of unauthorized information). Even if that weren't the case, a GTL contact is not just the name of the account owner; it is a means of communication with the person(s) who use the account, which here included a correctional officer. Accepting Ms. Crossley's argument would therefore require "a reading of a prison regulation that differs from [the Respondent's] understanding," which is not a ground for habeas relief. *Crawford v. Littlejohn*, 963 F.3d 681, 683 (7th Cir. 2020).

Ms. Crossley's argument that there is not sufficient evidence to find that she possessed unauthorized personal information does not provide a basis for relief.

### C. Retaliation, Biased Remarks by the DRO, and Policy Violations

Ms. Crossley argues that the Respondent retaliated against her for exercising her First Amendment right to communicate with Ms. Malone and "due to the loss of [Officer Gordon as an] employee." Dkt. 1 at 8-9. She also asserts that the DRO "continuously made inappropriate accusations in front of" the DHO, made "bias[ed] remarks of guilt throughout [her] entire hearing," and was eventually asked by the DHO to leave until the hearing was complete. *Id.* She argues that Respondent was "only concerned with finishing [her] hearing and finding [her] guilty versus giving [her] a fair hearing." *Id.* at 9. She also contends that the DHO's decision was retaliatory and biased because three policies were not followed in her hearing. Dkt. 1 at 9.

The Respondent argues that the due process requirements set forth in *Wolff* are the only protections available to Ms. Crossley, which she was afforded, and that she is not entitled to habeas relief on a First Amendment retaliation claim. Dkt. 15 at 12. The Respondent highlights that Ms. Crossley's arguments regarding biased remarks are based on remarks from the DRO, not the DHO, so she was not denied an impartial hearing officer. *Id.* at 13 ("[Ms.] Crossley does not claim she was denied an impartial hearing officer (although she complains about the screening officer [the DRO]"). Lastly, the Respondent argues that habeas relief is not available for violations of prison policy.

Ms. Crossley does not address the Respondent's arguments in her reply. Dkt. 22 at 10 (noting that, for this ground for relief, she has "no additional arguments or support.").

14

"The due process protections set forth in *Wolff*—advance written notice of violation, a written explanation of the decision, the right to present witnesses and evidence, and a decision by an impartial body—shield prisoners from arbitrary actions. Once those procedures are followed, [the Court's] only function is to determine if the disciplinary hearing officer's decision was based on 'some facts.'" *Martin v. Galipeau*, 801 F. App'x 444, 446 (7th Cir. 2020) (citations omitted). A habeas court is focused on only the *Wolff* due process protections, and a claim of retaliation is "irrelevant to whether [the petitioner] received due process." *Id.* (citing *Wolff*, 418 U.S. at 558; *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987)). Accordingly, Ms. Crossley cannot prevail on her argument alleging retaliation. *Id.* (finding that a retaliation claim in a § 2254 petition to recover lost good-time credit is "irrelevant to whether [the petitioner] received due process" under the *Wolff* protections and instructing the petitioner that a § 2254 petition "is not the way to bring a claim that a prison official retaliated against an inmate for . . . protected activity.")

As to Ms. Crossley's arguments regarding bias, a prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. A "sufficiently impartial" decisionmaker is necessary in order to shield the prisoner from the arbitrary deprivation of her liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam). Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie*, 342 F.3d at 666; *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, "the

15

constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666. Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Here, Ms. Crossley asserts that the DRO was biased toward her and made comments in an attempt to influence the DHO. But these arguments cannot entitle Ms. Crossley to habeas relief because the DRO was not the decisionmaker—the DHO was—and there is no evidence that the DHO presided over the disciplinary hearing in a biased manner. Instead, Ms. Crossley explains that the DHO asked the DRO to leave the hearing. Further, there is no evidence or allegation that the DHO was involved in the events leading up to Ms. Crossley's hearing.

Finally, Ms. Crossley is not entitled to relief on her argument that certain policies were not followed, leading to a biased decision. Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on violations of prison policy are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures

outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review.").

Ms. Crossley is not entitled to habeas relief on her arguments regarding retaliation, bias, and prison policies.

## IV.
### CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in Ms. Crossley's case, and there was no constitutional infirmity in the proceeding that entitles her to the relief she seeks. Accordingly, Ms. Crossley's Petition for a Writ of Habeas Corpus must be **DENIED**.

The Court notes that, according to the IDOC website and the sentence in Ms. Crossley's criminal conviction, it appears that Ms. Crossley was discharged from IDOC custody to the Gary Parole District on July 7, 2024,[5] with a probationary period of five years[6] from the date her executed sentence is

---

[5] https://www.in.gov/apps/indcorrection/ofs/ofs?offnum=253228&search2.x=43&search2.y=11 (last visited October 9, 2024).

[6] https://public.courts.in.gov/mycase/#/vw/CaseSummary/eyJ2Ijp7IkNhc2VUb2tlbiI6IldXQ2N0ZTlxY3Znd2gyZWFRZzc3NlhLdEhvdm1rTTTBual9PTzQwcENNiZWcxIn19 (last visited October 9, 2024).

17

completed.[7] Since her release, Ms. Crossley has not updated her address with the Court. In an attempt to ensure that Ms. Crossley receives the Court's Order, the Court is sending it to Ms. Crossley at both her outdated address on the docket and at the Gary Parole District so that the Gary Parole District may forward it to her or otherwise ensure her receipt of it.

Final judgment shall issue by separate order.

**SO ORDERED.**

Date: 12/3/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JOILISE CROSSLEY
253228
INDIANA WOMENS PRISON
INDIANA WOMENS PRISON
Inmate Mail/Parcels
727 Moon Road
Plainfield, IN 46168

Joilise Crossley
253228
Gary Parole District
569 Tyler St.
Gary, IN 46402

All electronically registered counsel

---

[7] Despite being on parole, the Court notes that Ms. Crossley is still "in custody" such that the Court has jurisdiction over her Petition. *Lauderdale-El v. Ind. Parole Bd.,* 35 F.4th 572, 575 (7th Cir. 2022) ("A case becomes moot when a court can no longer grant any redress for the alleged wrong. A challenge to a petitioner's custody becomes moot when custody ends and no collateral consequences remain. Because parole is a form of custody, a case that could shorten a former prisoner's term of parole is not moot.") (citing *Eichwedel v. Curry,* 700 F.3d 275, 278 (7th Cir. 2012) and *White v. Ind. Parole Bd.,* 266 F.3d 759, 762-32 (7th Cir. 2001)).